### CARLTON v. CARLTON.

Court of Appeals of Kentucky.

Feb. 26, 1954.

478

Fred Lisanby, Georgetown, for appellant.

J. C. McKnight, Georgetown, L. M. Ackman, Williamstown, for appellee.

DUNCAN, Justice.

The parties to this appeal were married August 24, 1949 and separated November 7, 1951. Soon after the separation, appellant instituted this action for divorce on the grounds of cruel and inhuman treatment and such cruel beating and injuries as to indicate an outrageous temper in appellee and probable danger to her life or great bodily harm from remaining with him. Appellee, by his counterclaim, sought a divorce on the same grounds. The lower court denied a divorce to both parties upon the ground that each was at fault. Appellant's prayer for alimony was dismissed, and the question of cost and attorney fees was reserved pending the appeal. The judgment further provided that appellee should retain possession of the home during the pendency of the appeal, and the motion for alimony pendente lite was overruled.

The record reveals that the appellant is a woman of small stature, four feet and four or five inches tall, weighing approximately 116 pounds. At the time of the separation, appellant was sixty-three and appellee was sixty-one years of age. Each of the parties had been married previously, the appellant's first marriage having terminated upon the death of her husband some thirteen years before her remarriage. This marriage marked appellee's fourth matrimonial venture, although two of the marriages were to the same spouse. Each of his previous marriages had terminated in divorce. Appellant had eight children by her former marriage, all of whom were grown at the time of her remarriage, although two of her sons were unmarried and living at home. The record indicates that appellee was childless.

Both parties had property at the time of their marriage. Appellant owned a farm which had been acquired through her first husband and was sold shortly after this marriage for $53,000. From this sum, she paid a personal indebtedness of $14,075.61, dividing $28,025 between seven of her eight children, and gave the eighth child her personal note for $6,000. The remaining funds were invested in two houses and lots of the approximate value of $12,500, and $2,000 was expended in helping to furnish and equip appellee's residence as a tourist home. The appellee has cash and government bonds amounting to approximately $12,000, a house and lot of the value of $15,000, and a Chrysler automobile valued at around $2,000.

The record reveals a situation which offers little hope for a reconciliation. Early in 1950 some disagreement seems to have arisen between the parties concerning the fact that appellant's two unmarried sons were living in their home. Appellee demanded that the boys pay board, and had a notice to vacate served on one of them by the sheriff. He does not claim to have had any difficulty with this son but claims that he was disturbed by his whistling at the table.

After a series of incidents involving threats, abuse, and recriminations, short of

physical violence, the climax of the marital difficulties was reached on November 2, 1951, when appellee claims his wife had collected $30 or $35 from a roomer but had accounted to him for only $10. On this occasion, he followed her to the back of the house, got her down on the floor of a sleeping porch, twisted her neck, struck and kicked her. After she managed to escape, she called officers, who placed the appellee under arrest. He was later convicted on a charge of breach of the peace in connection with this assault and his punishment was fixed at five days in jail and a fine of $100. He was also placed under a $500 peace bond. The doctor who treated appellant for her injuries says that appellee stated to him that he had tried to kill his wife. Appellee admits the assault but undertakes to minimize its severity. The only justification which he offers is that he was afraid she was "about to call the law."

On several earlier occasions, appellee cursed and threatened appellant. In October, 1950, when one of her sons came by the house and she went out to the car to see him, she says that appellee slipped out the back door and around the side of the house to hear the conversation. On that occasion, he threatened to kill her son if he got out of the car. Appellant is corroborated in this statement by her daughter-in-law, who was present. Appellee admits that he slipped out of the house but denies that any threats were made to the son. After the son and his wife left the premises, appellee cursed and threatened his wife.

On another occasion, the appellant had planned to visit her sister in Ohio and wanted to use her husband's car for the trip. On the day the trip was to be made, he refused to let her have the car and cursed her in the presence of her niece, Mrs. Alice Fugette.

At another time, in the presence of an employee of the telephone company, he again cursed his wife when he discovered her in the process of having the telephone moved from one room to the other. He again cursed her and shook his hand in her face in a disagreement concerning appellant's efforts to obtain possession of one of her houses from the person from whom she had purchased it. Other witnesses testified to a number of threats which appellee had made on appellant's life.

It would unduly lengthen the opinion to recite in detail the many incidents in which appellee showed himself to be completely without any of the qualities which are so necessary in a successful marriage. His conduct throughout most of the marriage was abusive, threatening, and on the one occasion, dangerous and vicious.

The evidence concerning appellant's conduct toward her husband rests largely upon the testimony of the appellee. He claims that on one occasion she ordered him to remove a garbage box and threatened that one or more of her sons might do him some physical violence. He also complains bitterly about her having him arrested. He says that on one occasion she called him a son-of-a-bitch in the presence of her son and requested another son to get her a gun which she threatened to use on appellee. All of these statements are denied by appellant. The only other evidence concerning appellant's treatment of appellee is the deposition of Charles Balof, which was taken on interrogatories and is not fully developed. This witness testified that he was an employee of the American Telephone and Telegraph Company in 1949 and some of his co-employees roomed at the Carlton Tourist Home and he paid their rent, sometimes to Mrs. Carlton and sometimes to Mr. Carlton. He says that on numerous occasions he heard appellant make "derogatory statements about her husband in matters of money and other matters," and on one occasion, "Mrs. Carlton used profane and abusive language in regard to Mr. Carlton." He further states that during the time he had business dealings with this couple there was a continual argument between them over money.

■ Appellee emphasizes the fact that his abuse and mistreatment of his wife reached a point of physical violence on only one occasion. The argument is reminiscent of the common law adage, invoked in actions for damage on account of being bitten by another's dog, that each dog is entitled to one bite. The brutal assault which appellee made upon appellant has no conceivable justification, and we are not impressed by the fact that it has not been repeated. The one occasion is sufficient to justify a divorce upon the grounds alleged in the petition.

■ We cannot say that the record shows appellant to be entirely without fault. It is very seldom in a divorce action that we find either party to be altogether blameless. However, her right to a divorce is not conditioned upon her being completely free from fault. KRS 403.020 provides grounds upon which a divorce may be granted to the wife if she is not in like fault. In construing the statute, we have often recognized that the wife's right to a divorce is not defeated unless she has been equally at fault with her husband. Grubb v. Grubb, 310 Ky. 449, 220 S.W.2d 1000; Stiles v. Stiles, 224 Ky. 526, 6 S.W.2d 679.

■ Under any view of the evidence, the appellant was not equally at fault with her husband. Her imperfections did not approach those of the appellee, and we think the lower court was in error in denying her a divorce. It necessarily follows that an award of some alimony should be made to appellant. However, the amount of alimony, restoration of property, costs and attorney fees are matters which the trial court should determine in the first instance. We feel that we should not attempt to direct or control at this stage the court's discretion in adjusting the property rights of the parties. These matters are expressly reserved.

The judgment is reversed for proceedings consistent with this opinion.