Bette-Joyce MINNIS, Appellant,

v.

James Carman MINNIS, Appellee.

Court of Appeals of Kentucky.

May 2, 1958.

Nathan B. Cooper, Louise G. Kirtley, Owensboro, for appellant.

William M. Gant, Gant & Carroll, Owensboro, for appellee.

CAMMACK, Judge.

In August 1956, the appellant, Bette-Joyce Minnis, brought this action for di-

vorce on the ground of cruel and inhuman treatment against the appellee, James Carman Minnis. Mrs. Minnis sought custody of the couple's two-year old daughter, Merry Jo, and $25 a week for the child's support. The trial court denied the divorce, but granted Mrs. Minnis custody of Merry Jo and awarded $15 a week for the child's support. This appeal is from the part of the judgment which denied Mrs. Minnis a divorce.

■ The appellant contends that the trial court erred in refusing to grant her a divorce and that recrimination was not a bar to her action. The appellee contends that the appellant failed to sustain her charge of cruel and inhuman treatment, and that she was guilty of behaving toward him in a cruel and inhuman manner.

■ The appellant was 18 and the appellee was 20 when they married in April 1954. For the first few months of the marriage the couple resided with the groom's family. Then they moved to an apartment where they lived until after the child was born late in 1954. Very shortly afterwards the couple again moved in with the family of the appellee, where they remained until August 1955. At that time the appellant left the appellee, but they were reconciled when he promised to provide an apartment for his wife and child. The couple moved into an apartment where they resided until the final separation in August 1956. Merry Jo was kept in the home of the appellee's parents from the time of her birth until the institution of this action.

The turmoil in this marriage commenced soon after the child was born and while the couple was staying at the home of the appellee's parents. It was necessary that both parties work, and the baby was left in the care of the paternal relatives. The appellee claims that the appellant neglected the child during that period and attempts to justify his subsequent conduct toward his wife on that charged neglect. On the other hand the appellant insists that she was kept from the child by its grandmother and other paternal relatives. She said she was required to do laundry and cooking for the whole household. The story of the appellee's mother was that the appellant neglected her child and refused to help with the housework. Had some of the interest and affection of the grandmother for the child been extended to its mother, the trail of this unhappy marriage might have been a different one.

When the couple moved into their own apartment after their first separation in 1955, Merry Jo remained with her paternal grandparents. The appellee claims that he would have agreed to having Merry Jo in the apartment when he and the appellant were home provided the child remained with his parents rather than at a nursery school during the daytime. The appellant claims that he refused absolutely to have the child in the apartment at all. The appellee's oft-repeated statement that he considered the appellant an unfit mother lends credence to the appellant's statement that he refused to have the child in the apartment under any circumstances. In any event, though he had promised to bring the child to the apartment, he actually took the mother to see the child only three or four times a week. These visits tapered off until by January 1956 the appellant was not seeing her child at all. The appellee told the appellant that he was not seeing Merry Jo any more than she was, but he ate lunch at his parents' home and saw his daughter daily.

Most of the arguments, which occurred at least three or four times a week, were occasioned by the appellant's requests to be taken to see her child and the appellee's refusals to allow the visits. The appellee used vulgar and abusive language while arguing with the appellant. During at least one of these arguments the appellee struck the appellant. "She goaded me into it," he said, "with the fact that I was not a fit father as well as she was not a fit mother, and I slapped her."

There are other instances where physical violence was inflicted upon the appellant by the appellee and members of his family. On one occasion he knocked her onto the bed, jumped on her and slapped her, and accused her of infidelity. He insisted that her statements to him at the time justified his belief in her infidelity and warranted the treatment given, but charges of immorality on the part of the appellant were groundless and the trial court properly so found.

We find no basis for the charge of recrimination, though the appellant was not wholly without fault. In Carlton v. Carlton, Ky., 265 S.W.2d 477, we said that a wife's right to a divorce under KRS 403.020 is not defeated unless she has been equally at fault with her husband. In the case at hand the appellant sometimes returned the appellee's accusations, but it was not shown that she cursed him or tried to cause him bodily injury.

The appellant insists that she was entitled to a divorce on the ground of cruel and inhuman treatment because she proved (1) mental cruelty and neglect, (2) arguing, cursing and physical violence, and (3) unfounded charges by her husband, not acting in good faith, of unchastity on her part. We think her position is well taken, and have reached the conclusion that the trial court erred in not granting Mrs. Minnis a divorce.

As pointed out by the commissioner who heard the case, the appellant was never given an opportunity to care for her child.

On this question she met with only her husband's broken promises. What could be more "mentally cruel" to a young mother? Cursing and physical violence are admitted, though with what we consider groundless attempts at justification. The testimony concerning the accusation of unchastity corroborates the appellant's testimony in regard to mental cruelty and physical violence inflicted upon her.

We have noted that custody of the child was given Mrs. Minnis. She asked for no alimony and was awarded $15 per week for the child, instead of $25 as she asked. She is not questioning that allowance at this time. In this particular case we think the welfare of the child might well be considered in connection with the question of a divorce or no divorce for the mother. Here is a young mother, not immoral, who must work to support herself and her child, aside from $15 per week. The possibility of reconciliation with her husband would appear, from the record before us, most remote. The responsibility for the failure of the marriage lies much more lightly on her shoulders than on her husband's. Under the circumstances would it appear to be conducive to providing a proper home for the child for the status of the mother to remain that of a married woman? We think not. As we have indicated, we think the trial court erred in not granting Mrs. Minnis a divorce.

Judgment reversed, with directions to set it aside, and for the entry of a judgment in conformity with this opinion.